**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MICHELLE RENE DORAN,**

               **Plaintiff,**              **CIVIL ACTION NO. 11-15120**

    **vs.**

                                 **DISTRICT JUDGE JULIAN ABELE COOK**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

               **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's motion for remand (docket no. 11) should be granted and Defendant's motion for summary judgment (docket no. 12) should be denied.  The decision of the Commissioner should be reversed and this matter remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.**    **PROCEDURAL HISTORY:**

      Plaintiff protectively filed an application for supplemental security income on August 6, 2008, alleging disability beginning July 1, 2007.[1]  (TR 14, 98-100).  The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing.  On June 9, 2010 Plaintiff appeared with counsel in Flint, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Elliott Bunce, who presided over the hearing from Falls Church, Virginia.  (TR 39-59).  Vocational Expert (VE) Mary Williams also appeared and testified at the

---

[1]The ALJ declined to accept Plaintiff's proposed amended onset of disability date of August 6, 2008.  (TR 14).

hearing.  In an August 26, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because the evidence showed that there are a significant number of jobs existing in the national economy that she can perform.  (TR 14-22).  The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review.  Currently before the Court are Plaintiff's motion for remand and Defendant's motion for summary judgment.

**III.    PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE**

**A.    Plaintiff's Testimony**

Plaintiff was forty-eight years old on the date the application was filed.  She lives in a house with her college-aged son, her fiancé, and her sister.  (TR 43-44).  Plaintiff attended college and earned an Associates degree in legal assisting.  (TR 45).  She has a driver's license and drives every other day to the store or to a doctor's appointment.  (TR 45).  Plaintiff testified that she is able to wash dishes if she takes breaks while she does it, wash laundry provided someone carries the laundry up and down the stairs for her, and perform light dusting.  (TR 45).

Plaintiff testified that she underwent a cervical discectomy fusion that makes it difficult for her to turn her head from side to side.  She stated that she has constant pain in her lower back, shoulders, and neck that radiates down her entire spine and affects her hips and legs.  (TR 52).  She reported that she experiences constant pain and extreme muscle spasms in her shoulders that can last up to two days.  (TR 50-51).  Plaintiff testified that she wears hearing aids in both ears and she suffers from shortness of breath or Chronic Obstructive Pulmonary Disease (COPD).  (TR 46-47).  She testified that she takes Pro-Air, medication to help her tolerate her pain, and Flexeril.  (TR 47-48).  She reported that she gets extremely drowsy when she takes Flexeril and Hydrocodone and she stated that her medication makes it difficult for her to concentrate.  Plaintiff reported that she lays

down for an hour every day to rest. (TR 48). She testified that she has two to three bad days each week.

Plaintiff testified that she would be unable to lift and carry objects throughout an eight-hour workday. (TR 48). She estimated that she could walk one block before needing to take a break due to back and hip pain, she suffers from muscle spasms in her back if she stands for a long period of time, she is capable of standing for twenty minutes at a time before she needs to sit, and she can sit thirty minutes before experiencing hip and lower back discomfort. (TR 49-50). She reported that her shoulder pain is aggravated if she overexerts herself or does a lot of repetitive lifting or reaching. (TR 51). Plaintiff testified that she can bathe herself and put on shoes and socks, but she needs assistance clasping her bra.

### B.   Medical Evidence

The undersigned has thoroughly reviewed Plaintiff's medical record and will summarize limited portions of the record below as it pertains to Plaintiff's physical condition only. Between April 9, 2007 and February 8, 2008 Plaintiff was treated at Covenant Healthcare in Saginaw, Michigan. (TR 161-73). An MRI examination dated April 9, 2007 indicated radiculopathy of the right shoulder and arm and left the impression that Plaintiff had degenerative disc disease at C5-C6 and C6-C7 with mild spinal stenosis but no disc herniation. (TR 170). On April 24, 2007 Plaintiff was examined by neurosurgeon Dr. Frank Schinco. During her initial examination Plaintiff complained of right-sided neck pain radiating to the right shoulder, with numbness and paresthesias in the right arm down to the hand in the second and third digit. (TR 245). Dr. Schinco noted that Plaintiff's range of motion of the right shoulder was diminished with some discomfort.

On July 9, 2007 Plaintiff underwent an anterior cervical discectomy and fusion of her neck at Covenant Healthcare in Saginaw, Michigan.  (TR 161-68).  Plaintiff returned to Covenant Healthcare on August 28, 2007 for a re-evaluation with Dr. Schinco.  (TR 173).  The doctor recommended physical therapy after noting that Plaintiff had some muscle spasms across her neck along with some discomfort in the interscapular area.  (TR 173).  In October 2007 Dr. Schinco reported that Plaintiff's range of motion of her neck was good despite the fact that she continued to complain of some left-sided neck and shoulder discomfort with heaviness in the left arm.  The doctor indicated that he thought she should have some work restrictions.  (TR 172, 237).  Dr. Schinco examined Plaintiff again in February 2008 and noted that her surgical incision was well healed.  He documented that Plaintiff had tenderness and crepitus in both shoulders, especially on the left side, but found no motor sensory or reflex deficit and no Tinel's sign.  He recommended an orthopedic evaluation.  (TR 171).

In November 2008, Dr. Schinco reported that Plaintiff was doing well although she was complaining of neck and bilateral shoulder discomfort and upper arm pain again.  The doctor documented that Plaintiff had numbness and paresthesias in both arms and fingers in the area of C6.  The doctor observed that Plaintiff's neck was supple, there was minimal tenderness in the posterior neck, no detectable Tinel's sign over any peripheral nerve of either upper extremity, and no clear motor or sensory deficit in the arms or legs.  (TR 329).  In December 2008 Dr. Schinco recorded that Plaintiff's range of motion of the cervical spine was diminished as expected, but there was no motor sensory or reflex deficit and no new compression of the neural structures.  The doctor concluded that further neurodiagnostic testing or treatment was not warranted.  (TR 329).  A neurodiagnostic report dated December 2008 states that Plaintiff's cervical spine range of motion was full, her motor and

sensory imaging were normal, and deep tendon reflexes were one of four in both upper extremities and symmetrical. (TR 330-31). The examiner determined that the EMG showed chronic neurogenic process affecting muscle innervated by right C7 spinal nerve root, consistent with an old right C7 radiculopathy. An MRI of the cervical spine dated December 2008 revealed post-surgical changes in the form of anterior discectomy and anterior metallic fusion plate at C6-C7 level, and degenerative disc with discogenic endplate changes at the C5-C6 level with mild to moderate broad-based central disc bulge along with an endplate osteophytic spur causing effacement of the ventral thecal sac. (TR 332). The exam also showed posteriolateral disc bulge along with an unconvertebral osteophytic spur moderately to severely comprising the C6 neural foramen bilaterally, although somewhat more on the left side than the right.

Plaintiff presented to the Saginaw Valley Bone & Joint Center on March 26, 2008 for an evaluation of both shoulders. (TR 265). Plaintiff complained of a grinding type pain that is worse with activity. On physical examination she was observed to have some pain to resisted adduction and external rotation, pain with abduction of the scapular plane, some weakness, and some sign of impingement. (TR 265). The examiner noted that her neurovascular status was intact with good motor function, her sensation was intact, she had no instability, but she did have discomfort with generalized range of motion testing. (TR 265). The examiner concluded that Plaintiff should receive an MRI of the right shoulder to rule out a rotator cuff tear. (TR 264). Plaintiff's insurance company declined to cover the cost of the MRI because Plaintiff had not provided proof that she attempted physical therapy first. (TR 273). In or around April 2008, Plaintiff began receiving physical therapy. A physical therapy plan of care dated April 29, 2008 states that Plaintiff presented with bilateral shoulder pain, worse in the right shoulder, with tenderness at the right supraspinatus,

poor glenohumeral movement, poor scapulothoracic rhythm and posture, and overall weakness in shoulder strength. (TR 271-72). The progress note states that Plaintiff would receive physical therapy three times per week for four weeks with a good rehabilitation potential. It shows a diagnosis of rotator cuff tendinitis.

Dr. Siva Sankaran completed a consultative examination for the state disability determination service on October 22, 2008. (TR 321-28). On physical examination, Dr. Sankaran noted that Plaintiff was ambulatory without any walking aid. The doctor observed that Plaintiff's left shoulder had normal range of motion without any tenderness or limitation, her neck had some muscle spasms present, her right shoulder was painful and tender with decreased range of motion, there was tenderness over the rotator cuff with muscle spasm, and she exhibited a decreased neck range of motion of side to side motion and flexion and extension. The doctor noted that Plaintiff had scoliosis of the dorsal spine to the right, and Tinel's and Phalen's sounds were negative. The doctor noted that Plaintiff was able to open a jar, button clothing, write legibly, pick up a coin and tie shoelaces with either hand. The doctor reviewed the medical record and noted that Plaintiff had arthritis of the shoulder. She noted that x-rays showed arthritis of the AC joint. The doctor determined that Plaintiff had limitations in range of motion but otherwise concluded that Plaintiff was unlimited in her physical abilities. (TR 325-28).

On November 3, 2008 Gary Macaulay, a single decision maker, completed a physical residual functional capacity assessment for the state disability determination service. (TR 153-160). Mr. Macauley found that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand, walk, or sit about six hours in an eight hour workday; with limited push/pull activities in the upper extremities. Mr. Macauley determined that Plaintiff could

6

occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl, and she was limited in reaching in all directions with only occasional overhead reaching with her right upper extremity, but otherwise with no manipulative limitations.  He found that Plaintiff had no visual or communicative limitations, and she was unlimited in her environment except for the fact that she should avoid concentrated exposure to noise and vibration.  Mr. Macauley opined that Plaintiff's allegations were partially credible, and her maximum sustainable capacity would not exceed the RFC assessment.

An x-ray of the lumbar spine dated May 2010 showed no acute abnormality of the lumbar spine.  (TR 343).  A medical progress note from Dr. Carlos Diola dated May 7, 2010 reported that Plaintiff's wrists and elbows were not swollen with full flexion.  He found that Plaintiff's shoulders were not swollen, non-erythematous with no effusion and not tender.  The doctor documented that Plaintiff was able to perform slow and restricted to ninety degrees forward arm raising, rotations, and abduction of the shoulders.  The doctor noted less than eleven trigger points, yet concluded that it was highly likely that Plaintiff had fibromyalgia.  The doctor further opined that Plaintiff had polyarthralgia, cervical spondylosis without myelopathy, mid back pain, and lumbalgia.  (TR 340).

## IV.    VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past relevant employment consisted of unskilled work as a parts inspector classified as medium exertional work, skilled work as a legal assistant at a sedentary level, and semiskilled work as a receptionist performed at a light exertional level.   (TR 56).

When questioned by the ALJ, the VE testified that there would only be one job category available for an individual who required light exertional level work with less than frequent reaching of the arms, although there are a significant number of jobs available if the person was capable of

frequent reaching of the arms.  (TR 56).  The ALJ asked the VE to testify whether any unskilled, entry level jobs were available for an individual with Plaintiff's age, education, and past work experience who requires light work that does not demand more than frequent reaching or a cervical rotation beyond fifty percent of normal.  (TR 57).  The VE testified that the hypothetical individual could work as a cashier, usher or ticket taker, and information clerk, comprising 39,800 available jobs in the local region.  (TR 72).  The VE testified that these same positions would be available if the individual was also limited to simple, routine, repetitive tasks with one or two step instructions.  If, in addition to all of the above, the individual was not capable of performing a job with strict production quotas that would require her to produce a specified number of units of work in a specified period of time, or if the individual was limited to occasional stooping and no climbing, she could still perform the jobs listed above.  If the individual would be off task to lay down one to two hours each day she would be precluded from work.

## V.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since her application date of August 6, 2008, and suffers from the severe impairments of degenerative disc disease and depression, she did not have an impairment or combination of impairments that meets or equals the Listing of Impairments.  (TR 14-18).

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work that does not require more than frequent reaching or cervical rotation greater than fifty percent of normal, more than occasional stooping, or any climbing, or more than simple, routine, repetitious tasks with one to two step instructions.  (TR 18-20).  The ALJ concluded that because Plaintiff is not capable of performing her past relevant work, but she could perform jobs that exist in significant

8

numbers in the national economy, Plaintiff is not under a disability as defined in the Social Security Act.  (TR 20-22).

## VI.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions.  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.    Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

1. she was not engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and

9

3.  the impairment met or was medically equal to a "listed impairment;" or

4.  she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  20 C.F.R. § 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

C.    **Analysis**

Plaintiff alleges that she is disabled largely due to her inability to frequently use her upper extremities due to a combination of neck and shoulder impairments.  In her motion for remand she argues that the ALJ committed reversible error because his findings that Plaintiff is able to frequently lift, reach and use her upper extremities is not supported by substantial evidence.  She also argues that the ALJ should have given greater weight to her testimony regarding her symptoms, and she contends that the ALJ's failure to find a severe impairment of the right shoulder at step two constitutes reversible legal error.

1.    *The Step Two Determination*

10

It is well-established that the finding of severe impairments at step two is a threshold determination. "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)). Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). This is so because the second step is designed simply to screen out and dispose of baseless claims, which it accomplishes by testing whether the claimant has *any* severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities. *Anthony v. Astrue*, 266 Fed. Appx. at 457; 20 C.F.R. § 416.920(c).

The ALJ found at step two that Plaintiff's degenerative disc disease and depression constituted severe impairments. He then proceeded to the remaining steps of the sequential analysis where he discussed evidence pertaining to both Plaintiff's neck and shoulder impairments. The undersigned finds that the ALJ did not err in omitting a shoulder impairment from the step two analysis.

2.   *Assessment of Plaintiff's Credibility, the RFC, and Step Five Determination*

Next, Plaintiff contends that she testified that any type of repetitive lifting or reaching makes her pain worse. She claims that her testimony is supported by objective testing including MRI testing that reflected two bulging discs that are causing central canal stenosis, mild flattening of the cervical spinal cord, moderate to severe compromise of the C6 neural foramen, and ongoing nerve

damage at the C7 level.  Plaintiff contends that the ALJ should have given greater weight to her testimony since it is supported by objective findings.  She also challenges the ALJ's RFC finding, arguing that her neck and shoulder impairments caused disabling work-related limitations that the ALJ's RFC failed to account for.  Finally, she claims that the  ALJ's disability determination is not supported by substantial evidence because the hypothetical question presented to the VE failed to take into consideration Plaintiff's inability to sustain use of her arms as a result of both her neck and shoulder impairments.

A claimant's "[s]ubjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Comm'r*, 105 Fed. Appx. 794, 801 (6th Cir. 2004) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  A claimant's assertions of disabling pain and limitation are evaluated according to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters v. Comm'r*,  127 F.3d 525, 531 (6th Cir. 1997) (citations omitted).

The ALJ's conclusions regarding credibility "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citation omitted).   A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider

the entire case record and give specific reasons for the weight given to the individual's statements.

. . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34485-86 (1996).  The assessment must be based on a consideration of all of the evidence in the case record, including

Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. at 34486.

As for whether the ALJ's hypothetical question to the VE constituted substantial evidence, it is well-established that the ALJ may base his disability determination on the testimony of a VE in response to a hypothetical question, "but only if the question accurately portrays Plaintiff's individual physical and mental impairments."  *Varley*, 820 F.2d at 779 (citations and internal quotation marks omitted).

Here, the ALJ considered the evidence and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  The ALJ then concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC.  The ALJ stated that the RFC took into account Plaintiff's physical limitations by specifying work that does not require more than

light exertion or frequent reaching, or cervical rotation greater than 50 percent of normal, or more than occasional stooping or any climbing. The ALJ found that these limitations fully accounted for the physical shortcomings established on the record. The ALJ discounted Plaintiff's testimony only to the extent she alleged that she could not work within the scope of the RFC.

The ALJ stated that he gave significant weight to the medical evidence of record in reaching these conclusions. However, the ALJ did not discuss Dr. Diola's May 7, 2010 assessment that states that Plaintiff exhibited slow and restricted to ninety degrees forward arm raising, rotations, and abduction of the shoulders. (TR 340). The ALJ did discuss Dr. Diola's opinion as a whole, but excluded any discussion of Plaintiff's slow and restricted forward arm raising. Certainly there is no requirement that the ALJ discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (citation omitted). Yet this finding is consistent with other evidence showing that Plaintiff was developing post-surgical impairments of the shoulder and could offer significant insight as to whether Plaintiff remained capable of performing frequent reaching on a sustained basis. The assessment may also be indicative of whether Plaintiff was capable of overhead reaching, a limitation that was not included in the hypothetical questions to the VE or in the RFC.

The Court is not permitted to judge the evidence or make findings of fact. The ALJ gave significant weight to the medical evidence of record, yet did not discuss the May 2010 finding that Plaintiff exhibited slow and restricted to ninety degrees forward arm raising, rotations, and abduction of the shoulders. The undersigned suggests that a discussion of this assessment as it relates to the other evidence of record and to Plaintiff' ability to sustain frequent bilateral reaching or overhead reaching was warranted. Dr. Diola's assessment bears directly on Plaintiff's claims of

14

disabling limitations, and may be particularly significant in light of the fact that the VE testified that only one category of jobs was available at the light exertion level that requires less than frequent reaching of the arms. Given the relevance of this evidence to the ultimate disability determination, and it's seeming consistency with other evidence of record that showed that Plaintiff exhibited decreased range of motion of the right shoulder and post-surgical changes, the undersigned recommends that this matter be reversed and remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should consider the evidence discussed in this report and determine whether, in light of this evidence, there is any change in his assessment of Plaintiff's credibility, her RFC, the hypothetical questions presented to the VE, or to the ultimate disability determination.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not

15

later than 14 days after service of an objection, the opposing party may file a concise response

proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and

labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court

determines that any objections are without merit, it may rule without awaiting the response.


Dated: February 11, 2013            s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE



**<u>PROOF OF SERVICE</u>**

     I hereby certify that a copy of this Report and Recommendation was served upon Counsel

of Record on this date.

Dated: February 11, 2013            s/ Lisa C. Bartlett
                                    Case Manager